**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **DANTE ORAZI and EILEEN ORAZI,** : | |
|    **Plaintiffs,** : | |
| : | **CIVIL ACTION** |
|       **v.** : | **NO. 09-cv-05959** |
| : | |
| **HILTON HOTELS CORPORATION** : | |
| **d/b/a HAMPTON INN; HAMPTON INN;** : | |
| **ALLEN STACY HOTEL, LTD.; GATEWAY** : | |
| **HOSPITALITY LLC; GATEWAY** : | |
| **GATEWAY HOSPITALITY GROUP, INC.,** : | |
|    **Defendants.** : | |
| : | |

---

### MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                    **November 19, 2010**

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction and Improper

Venue, or, in the Alternative for Transfer to the Eastern District of Texas, filed by Defendants

Hampton Inn ("Hampton Inn"), Allen Stacy Hotel, Ltd. ("Allen Stacy") and Gateway Hospitality

Group, Inc. ("Gateway Group") [Doc. No. 3].  For the reasons that follow, Defendants' Motion is

denied with leave to renew following the close of jurisdictional discovery.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Dante and Eileen Orazi ("Plaintiffs"), both residents of Pennsylvania, bring

counts of negligence and loss of consortium against Defendants for injuries occurring during

their stay at a Texas hotel.[1]  Mr. Orazi, age 80 at the time of the incident giving rise to these

---

[1] See Defs.' Mem. in Supp. Jt. Mot. to Dismiss ("Mem. in Supp."), Ex. 1 ("Compl.") at ¶¶ 22–32 [Doc. No. 3-1].

claims, researched hotels online from his home in Narberth, Pennsylvania.[2] He reserved a

handicapped room at the Hampton Inn in Allen, Texas, a franchise hotel owned by Allen Stacy,

via the website www.hilton.com or www.hamptoninn.com, and received confirmation of his

reservation while in Pennsylvania.[3] When the Orazis arrived at the Allen, Texas Hampton Inn on

October 25, 2007, they found their reservation to be in place, registered, and were assured they

had a handicapped room.[4] At some point after the Orazis checked into their assigned room, Mr.

Orazi "was caused to slip, trip and fall" in the bathroom, suffering injuries, including fractured

vertebrae, that required surgery.[5]

In October 2009, Plaintiffs filed a complaint in the Philadelphia County Court of

Common Pleas against Hilton Hotels Corporation, Inc. n/k/a Hilton Worldwide ("Hilton"),

---

[2] See Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp."), Ex. B ("Orazi Aff.") ¶¶ 1–2, 6–7 [Doc. No. 11-2]; Defs.' Reply, Ex. A. ("Hutcheson Aff.") ¶ 5–6 [Doc. No. 15-3].

[3] See Orazi Aff. ¶ 7.

Plaintiffs, in opposition to Defendant's Motion, submitted both an "Answer" to the motion as well as a "Brief in Support" [Doc. No. 11]. Despite this error, and for clarity's sake, the Court herein refers to both documents as "Plaintiffs' Response," citing to the former by paragraph and the latter by page number. Likewise, Defendants, in reply, replicated Plaintiffs' error, submitting both a "Supplement and Reply" and a "Memorandum of Law" [Doc. No. 17]. The Court herein refers to both as "Defendants' Reply," citing to the former by paragraph and the latter by page number.

[4] Compl. ¶ 13–14; Orazi Aff. ¶ 11. It is unclear from the Complaint whether Mr. Orazi was, in fact, denied handicapped accessible accommodations upon his arrival at the Allen, Texas Hampton Inn because the Complaint never directly alleges as much. However, the Court infers from Plaintiffs' responsive papers that the Orazis allege they were not provided such accommodations. See Pls.' Resp. at 11 (asserting that Defendants *misrepresented* that they would provide a handicapped room). At this stage, because the Court construes disputed facts in favor of the Plaintiffs, the Court presumes the Orazis were not provided accessible accommodations, but notes that this finding is irrelevant to the disposition of the pending motion.

[5] Compl. ¶ 15; Orazi Aff. ¶ 12.

Hampton Inn, Allen Stacy Hotel, Ltd. ("Allen Stacy"), Gateway Hospitality LLC,[6] and Gateway Hospitality Group, Inc. ("Gateway Group"), alleging negligence and loss of consortium. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) [Doc. No. 1]. On December 21, 2009, Defendants Allen Stacy, Gateway Group, Hampton Inn and Hilton filed the pending motion to dismiss for lack of personal jurisdiction and improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, or, in the alternative for transfer to the United States District Court for the Eastern District of Texas. Hilton has since withdrawn from the motion entirely [Doc. Nos. 13 & 14] and has filed no further answer or alternative motion,[7] and Gateway Group has since conceded it is subject to personal jurisdiction in Pennsylvania, and thus challenges only venue.[8] Accordingly, the pending motion for dismissal for lack of personal jurisdiction applies only as to Hampton Inn and Allen Stacy, and the motion for dismissal for improper venue applies as to Hampton Inn, Allen Stacy and Gateway Group ("Moving Defendants").

## II.  STANDARD OF REVIEW

Plaintiffs bear the burden of demonstrating personal jurisdiction over Hampton Inn and Allen Stacy.[9] If a jurisdictional defense is raised and neither discovery nor an evidentiary hearing

---

[6] The Parties have since stipulated to the dismissal of Gateway Hospitality LLC [Doc. Nos. 18 & 19].

[7] The court therefore concludes that neither Hilton nor any other Defendant challenges jurisdiction over Hilton.

[8] See Defs.' Reply at 2 n.2.

[9] Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).

has been held, a plaintiff need make only a prima facie showing of personal jurisdiction.[10]  Courts must construe all disputed facts alleged in the light most favorable to the non-moving party.[11]  Plaintiffs, however, cannot rely on general averments in the complaint or unsupported statements in their response, but must instead provide jurisdictional facts supported by affidavits or competent evidence to sustain their burden.[12]  That burden is met "by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."[13]

Whereas Plaintiffs bear the burden of establishing personal jurisdiction, Defendants bear the burden of showing improper venue.[14]  "In considering a motion to dismiss for improper venue, courts must generally accept as true the allegations in the Complaint, although the parties may submit affidavits in support of their positions."[15]  But the court must "draw all reasonable inferences and resolve all factual conflicts in favor of the Plaintiff."[16]

## III.   DISCUSSION

## A.    Personal Jurisdiction

Federal courts in Pennsylvania may assert jurisdiction over a defendant to the extent that

---

[10]  See id.

[11]  Id.

[12]  Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

[13]  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987)) (quotations omitted).

[14]  Myers v. Am. Dental Ass'n, 695 F.2d 716, 724–25 (3d Cir. 1982).

[15]  Chester v. Beard, No. 07-4742, 2008 WL 2310946, at *5 (E.D. Pa. June 1, 2008) (quotations and citation omitted).

[16]  Id. (quotations and citation omitted).

the defendant would be subject to jurisdiction in Pennsylvania state courts.[17]  Pennsylvania's

long-arm statute permits the exercise of jurisdiction over non-resident defendants to the full

extent permitted under the Due Process Clause of the United States Constitution.[18]  To establish

general jurisdiction—jurisdiction based on contacts with the state that are *unrelated* to the cause

of action—due process requires the plaintiff to demonstrate that the non-resident defendant's

contacts with Pennsylvania were "continuous and systematic."[19]  The standard is demanding.[20]

Specific jurisdiction may be found where the plaintiff's claim is "related to or arises out of the

defendant's contacts with the forum," and the defendant had "the minimum contacts with the

forum necessary for the defendant to have reasonably anticipate[d] being haled into court

there."[21]  Upon a finding that the first two criteria are met, specific jurisdiction requires the Court

to find that exercising jurisdiction "comport[s] with fair play and substantial justice."[22]

In some circumstances, the contacts of another defendant or even a non-party can be

imputed to a non-resident defendant for purposes of exercising either general or specific

---

[17]  See Fed. R. Civ. P. 4(k)(1)(A); Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998).

[18]  See Pennzoil Prods., 149 F.3d at 200 (citing 42 Pa. Stat. Ann.§ 5322).

[19]  Id. (citations omitted).

[20]  Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) ("The Third Circuit and its district courts have typically required a very high showing before exercising general jurisdiction . . . .").

[21]  Pennzoil, 149 F.3d at 201 (quotations and citation omitted) (alteration in original).

[22]  Id.

jurisdiction over that defendant.[23]  First, forum-state contacts of an agent may be imputed to the

principal.[24]  Agency requires that the purported principal controls the undertaking at issue, the

principal has manifested intent that the agent shall act on its behalf and the agent accepts the

undertaking.[25]  In reservation-services cases, whether the purported reservation agent is

empowered to bind the principal to the booking has been a key consideration.[26]  Second, in some

cases, the relevant forum-state contacts may be imputed where the purported agent performs

functions that but for its presence, the principal would otherwise have to perform.[27]

_____

[23]  See, e.g., Miller Yacht Sales, 384 F.3d at 95 n.1; Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993).

[24]  See Grand Entm't Grp., 988 F.2d at 483.

[25]  Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980).  See also, e.g., Favinger v. Power Screen Int'l Distrib. Ltd., No. 92-4069, 1993 WL 156135, at *3 (E.D. Pa. May 12, 1993); Wright v. Am. Std., Inc., 637 F. Supp. 241, 243–44 (E.D. Pa. 1985).

[26]  See, e.g., Gianfredi v. Hilton Hotels Corp., Inc., No. 08-5413, 2010 WL 1381900, at *7 (D.N.J. Apr. 5, 2010) (rejecting plaintiffs' argument that franchisor was an agent of non-resident franchisee where plaintiff made no allegation that the franchisor's reservation service bound the franchisee); Colantonio v. Hilton Int'l Co., Nos. 03-1833/03-5552, 2004 WL 1274387, at *7 n.10 (E.D. Pa. June 1, 2004) (no agency where plaintiff proffered no evidence that in-forum reservation service had authority to make binding reservations for non-resident hotel); Falcone v. Mediterranean Shipping Co., No. 01-3918, 2002 WL 32348270, at *2 (E.D. Pa. Apr. 3, 2002) (travel agency's contacts could not be imputed to cruise ship where it was not exclusive booking agent and lacked authority to confirm).

[27]  See, e.g., Action Mfg. Co., Inc. v. Simon Wrecking Co, 375 F. Supp. 2d 411, 421 (E.D. Pa. 2005); Brooks v. Bacardi Rum Corp., 943 F. Supp. 559, 563 (E.D. Pa. 1996); Gallagher v. Mazda Motor of Am., Inc., 781 F. Supp. 1079, 1084 (E.D. Pa. 1992) (citing Mirrow v. Club Med, Inc., 118 F.R.D. 418, 419–20 (E.D. Pa. 1986) (Pollak, J.)).  While courts in this Circuit have generally applied this test to parent-subsidiary relationships, courts in other jurisdictions have applied a similar test in determining whether contacts of unrelated corporate entities may be imputed.  See, e.g., Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (noting imputation under New York law is appropriate where an in-state  representative renders services on behalf of a non-resident corporation that "are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available").

Other tests for imputing contacts cited by Plaintiffs, however, appear to be applicable only in the context of parent-subsidiary relationships: contacts can be imputed by piercing the corporate veil or by showing that the parent controlled the day-to-day operations of the forum-state subsidiary.  See, e.g.,

### 1.     Personal Jurisdiction Over Hampton Inn

Plaintiffs have named Hampton Inn, purportedly a corporate citizen of Delaware with an address of 830 Stacy Road in Allen, Texas, as a Defendant in this action.[28]  But Plaintiffs have made only a weak attempt to establish personal jurisdiction over it.  Plaintiffs' conclusory assertion in the Complaint that Hampton Inn "regularly conducts, conducted, transacts and/or transacted business in the City and County of Philadelphia, Pennsylvania,"[29] is insufficient to support jurisdiction.[30]  And though Hampton Inn is among the Moving Defendants, Plaintiffs' Response is devoid of any argument that Hampton Inn is subject to this Court's jurisdiction.[31] The only facts alleged as to *any* Hampton Inn entity, beyond the Allen, Texas Hampton Inn franchise location, are that: (1) Dante Orazi reserved the hotel room using a www.hamptoninn.com or www.hilton.com website;[32] (2) a Hampton Inn hotel located in downtown Philadelphia provides a directory of other such hotels around the country, including the Allen, Texas Hampton Inn, and advertises Hilton's affinity credit card and loyalty programs;[33] and (3) other Philadelphia-area Hampton hotels participate in promotional efforts

---

Action Mfg Co., 375 F. Supp. at 421–22. Plaintiffs have not alleged any facts that warrant their consideration here.

[28]  See Compl. at 1 & ¶ 4.

[29]  Id. ¶ 4.

[30]  Time Share Vacation, 735 F.2d at 66 n.9.

[31]  Pls.' Resp. 3–12 (arguing only that personal jurisdiction exists over Hilton, Stacy Allen, and Gateway Group).

[32]  Orazi Aff. ¶ 10.

[33]  See Pls.' Resp. at 2.

with the local tourism board.[34]

These facts do not support jurisdiction over Hampton Inn. First, Plaintiffs neither allege nor provide evidence that Defendant Hampton Inn owned, operated, controlled or had any relationship, beyond sharing a brand identity, with the in-forum Hampton hotels located in Pennsylvania. Thus, the presence of the in-forum hotels and their independent actions to promote themselves or other Hampton Hotels are not relevant to Defendant Hampton Inn.[35] Second, Plaintiffs concede that the www.hamptoninn.com website used by Mr. Orazi is *Hilton's* website,[36] but neither allege nor support any agency or other relationship between Hilton and Hampton such that any website contacts might be imputed to Hampton Inn. Third, even if the advertising materials distributed within Pennsylvania by certain Hampton hotels could be imputed to the Defendant Hampton Inn, those contacts are insufficient to subject it to the jurisdiction of this Court where there is no showing that any of those materials were specifically targeted toward Pennsylvania residents, much less that the advertising was extensive.[37]

---

[34] See id. Ex. C ¶ 14.

[35] See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient to establish purposeful contact by the defendant) (citation and quotations omitted); Hlavac v. DGG Props., No. 04-6112, 2005 WL 839158, at *4 (E.D. Pa. Apr. 8, 2005) (third parties' mailing of catalogues to Pennsylvania residents is insufficient for general jurisdiction over defendant).

[36] See Pls.' Resp. at 1 & ¶ 2.

[37] See, e.g., Hlavac, 2005 WL 839158 at *4 (even if defendant directly mailed catalogue to Pennsylvania residents, mailing was insufficient for general jurisdiction unless targeted at forum residents); Fields v. Ramada Inn, Inc., 816 F. Supp. 1033, 1037 & n.3 (E.D. Pa. 1993) (advertisements, promotional brochures and worldwide directories that listed franchise locations insufficient for general jurisdiction); Wright, 637 F. Supp. at 243–45 (insufficient contacts where defendant, a non-resident defendant hotel franchisee, was listed in national directory of hotels and franchisor handled bookings through Pennsylvania-based call center).

Accordingly, Plaintiffs have not made a prima facie showing of either general or specific jurisdiction over Hampton Inn.

## 2. Personal Jurisdiction Over Allen Stacy

Defendant Allen Stacy, a franchisee of Hilton that owns the Allen, Texas Hampton Inn where Mr. Orazi was injured,[38] is incorporated in Texas and does not own property in Pennsylvania.[39] Moving Defendants assert that Allen Stacy conducts no business in Pennsylvania and had no involvement with any events occurring in Pennsylvania related to this action, and is thus not subject to personal jurisdiction here.[40] Plaintiffs do not argue that Allen Stacy itself has any direct contacts with Pennsylvania that subject it to jurisdiction here, but instead assert that Hilton's in-forum contacts can be imputed to Allen Stacy.[41]

### a. Agency, Alter Ego and Apparent Authority.

Plaintiffs argue that Hilton's in-forum contacts can be imputed to Allen Stacy because Hilton: (1) is an agent of Allen Stacy; (2) conducts activities in Pennsylvania that Allen Stacy would otherwise have to perform; or (3) acts under the apparent authority of Allen Stacy.[42]

Plaintiffs' agency claims rest principally on the allegation that Allen Stacy has authorized Hilton to make binding reservations on its behalf.[43] They rely on a series of hotel reservation

---

[38] Defs.' Reply ¶ 24.

[39] Compl. ¶ 6; Mot. to Dismiss ¶ 5; Pls.' Resp. ¶ 5; Defs.' Reply, Ex. A ¶ 12 ("Hutcheson Aff.").

[40] Mot. to Dismiss ¶¶ 10–12; Defs.' Reply at 3.

[41] Pls.' Resp. at 6–9.

[42] Id.

[43] Id. at 6–7.

service cases applying New York law, wherein the in-state reservation service's authority to make and confirm reservations without consulting the non-resident defendant—that is, the ability to bind the defendant—was a determinative factor in the courts' finding of agency.[44]  Courts in this Circuit likewise appear to place weight on the agent's authority, or lack thereof, to commit the non-resident to a reservation.[45]  Moreover, New York courts apply a standard for agency comparable to a test used by some courts in this District to impute jurisdictional contacts—whether the resident entity performs functions the non-resident Defendant would otherwise have to perform.[46]  Accordingly, this Court agrees that where a forum-state reservation service has the power to not only make reservations on behalf of a non-resident defendant but also to confirm them without need for further authorization from the defendant, the reservation service acts as non-resident's agent.[47]  Such a relationship satisfies the traditional elements of

_____

[44]  Id. (citing Chrobak v. Hilton Int'l, No. 06-1916, 2008 WL 4444111, at *4 (S.D.N.Y. Sept. 30, 2008) and Darby v. Compagnie Nationale Air France, 769 F. Supp. 1255, 1262 (S.D.N.Y. 1991)).  See also Russell v. Hilton Int'l of P.R., No. 93-2552, 1994 WL 38516, at *2 (S.D.N.Y. Feb. 4,1994) (citing cases).

[45]  See, e.g., Gianfredi, 2010 WL 1381900 at *7; Colantonio, 2004 WL 1274387 at *7 n.10; Falcone, 2002 WL 32348270 at *2.  Cf. Wilson v. Stratosphere Corp., No. 05-939, 2006 WL 1134169, at *3 (W.D. Pa. Apr. 24, 2006) (noting that use of third-party wholesaler of hotel reservations does not create an agency relationship where the contract is between the wholesaler and the consumer rather than the consumer and the hotel and the hotel is paid directly by the wholesaler not the consumer).

[46]  Compare Chrobak, 2008 WL 4444111 at *3 (under New York law, courts may "assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative and that renders services that . . . are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available") (citation and quotations omitted) with Brooks, 943 F. Supp. at 563 (to impute contacts, plaintiff must prove in-forum entity performs important functions that non-resident defendant would otherwise have to perform ).

[47]  Defendants assert that New York law should not be credited here because it requires a lesser showing for jurisdiction than applicable Pennsylvania law.  Defs.' Reply at 8.  The Court disagrees.  New York's long-arm statute requires that non-resident defendants are subject to general jurisdiction only if they are "doing business" in New York.  See Chrobak, 2008 WL 4444111 at *2.  Pennsylvania, by contrast, permits jurisdiction "to the constitutional limits of the [D]ue [P]rocess [C]lause of the

agency.[48]

Plaintiffs have not, however, made a prima facie showing that Hilton has authority to confirm reservations absent approval by Allen Stacy. It is clear that Hilton provides some reservation services to Allen Stacy.[49] Plaintiffs appear to argue that because Hilton confirms the reservation and that confirmation binds *the patron* to a contract,[50] that Allen Stacy is necessarily bound as well without having first approved the reservation. Defendants deny that Hilton independently confirms reservations, averring that Gateway Group, the operator of the Allen, Texas Hampton Inn, confirms reservations and that only Hilton maintains a contract with the reserving patron.[51] As no discovery has occurred, Plaintiffs do not have access to documents that clarify the operation of the reservation system and the respective rights and obligations of Hilton and Allen Stacy. As a result, this Court can only infer that Hilton has the power to bind Allen Stacy to reservations made on its behalf, and that is insufficient.[52]

---

[F]ourteenth [A]mendment." <u>Pennzoil Prods.</u>, 149 F.3d at 200 (citation & quotation omitted) (alteration in original).

[48] <u>See</u> <u>Scott v. Lackey</u>, No. 02-1586, 2010 WL 272275, at *5 n.13 (M.D. Pa. Jan. 20, 2010) ("Pennsylvania law also recognizes theories of implied authority . . . . which allows an agent to bind a principal to those acts which are necessary in the normal exercise of the agent's express authority.") (citations omitted); <u>Hunt v. Global Incentive & Meeting Mgmt.</u>, No. 09-4921, 2010 WL 3740808, at *5 (D.N.J. Sept. 20, 2010) ("An agent is cloaked with authority to bind the principal with third parties.") (citations and quotations omitted).

[49] Pls.' Resp. at 7 & Ex. C ¶ 5 (evidence of reservation and customer services provided by Hilton to Allen Stacy).

[50] <u>Id.</u> at 7 & Ex. C ¶19, Attach. 17 (rules impose cancellation penalties on patrons).

[51] Defs.' Reply at 4, 11.

[52] <u>See</u> <u>Colantonio</u>, 2004 WL 1274387 at *7 (more than a mere inference required for personal jurisdiction); <u>Wilson</u>, 2006 WL 1134169 at *3 ("[A]rgument and unsupported conclusions in [a] responsive brief . . . cannot properly be considered as 'facts' evidencing contact for jurisdictional purposes.").

Under the alternative test for imputing contacts, Plaintiffs must show that Hilton performs for Allen Stacy functions that Allen Stacy would otherwise have to perform.[53] For example, Plaintiffs must show that Hilton provides services *in Pennsylvania* that are "vital to the survival or success" of Allen Stacy.[54] Plaintiffs identify a range of services Hilton provides to Allen Stacy—advertising, marketing, reservation and customer services.[55] Defendants concede that under the Franchise Agreement, Allen Stacy can "participate in a system where Hilton can advertise the availability of rooms," and that Allen Stacy has a contract with Promus Hotel—an entity whose corporate relationship with Hilton is unidentified—that allows it to advertise on Hilton's website.[56] But contracting with an in-forum entity is not sufficient to create jurisdiction.[57] And Plaintiffs offer no facts that demonstrate the nature and terms of the agreements between Allen Stacy and Hilton or the amount and breadth of the services performed by Hilton on Allen Stacy's behalf in Pennsylvania. The Court can therefore determine only that Hilton and Allen Stacy have a franchise relationship that involves some services. But that relationship, standing alone, is insufficient for this Court to find jurisdiction over Allen Stacy.[58]

---

[53] Brooks, 943 F. Supp. at 563.

[54] Gallagher, 781 F. Supp. at 1085; accord Gavigan v. Walt Disney World, Inc., 646 F. Supp. 786, 789 n.5 (E.D. Pa. 1986) (imputing contacts of related entities where the in-forum activities of related corporations were necessary to foreign defendant's business).

[55] Pls.' Resp. at 8.

[56] Defs.' Reply at 5 & 6.

[57] See Koczkodon v. Grand Versailles, LLC, No. 10-3284, 2010 WL 3656037, at *2 (E.D. Pa. Sept. 17, 2010) (citing B.P. Chems. Ltd. v. Formosa Chems. & Fibre Corp., 229 F.3d 254, 262–63 (3d Cir. 2000).

[58] See Fields, 816 F. Supp. at 1038.

Plaintiffs' argument that Hilton's Pennsylvania contacts can be imputed to Allen Stacy under an "apparent authority" theory[59] is likewise unavailing. Apparent authority requires some act, either conduct or words, by the purported principal that leads a third party to reasonably believe the apparent agent is authorized to act for it.[60] Here, Plaintiffs' assertion that *Hilton's* advertising and branding led them to believe they were dealing with *Hilton*, not with Allen Stacy, does not meet this standard.[61] While under some circumstances that might be sufficient to impute Allen Stacy's jurisdictional contacts to Hilton,[62] it is not sufficient for the reverse. Plaintiffs have identified no conduct by Allen Stacy, other than its ordinary conduct as a franchisee, that led them to reasonably believe that Hilton was authorized to act as its agent. Indeed, under Plaintiffs' approach, whenever a franchisor and franchisee rely on a system of common advertising and branding—typical of most franchised businesses—any court with jurisdiction over the franchisor would have jurisdiction over the franchisee. And that cannot comport with due process.[63]

Accordingly, Plaintiffs have not yet demonstrated that Hilton's contacts may be imputed

---

[59] Pls.' Resp. at 7–8.

[60] See D & G Equip. Co. v. First Nat'l Bank, 764 F.2d 950, 954 (3d Cir. 1985); Falcone, 2002 WL 32348270 at *2 (even if purported agent claimed to be acting on Defendant's behalf, plaintiff failed to show apparent authority where record didn't show purported principal knew of those representations).

[61] See Pls.' Resp. at 8 ("[E]very customer that walks in . . . believes that they are in a 'Hampton Inn' owned and operated hotel and not a hotel owned and operated by some other entity . . . .").

[62] Cf. Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 795–96 (3d Cir. 1978) (franchisor, by "strictly controlling the manner in which the franchisee was perceived by the public [that] created an appearance of ownership and control purposefully designed to attract the patronage of the public," might be vicariously liable for the act of the franchisee under apparent authority theory).

[63] Cf. Fields, 816 F. Supp. at 1038 (asserting jurisdiction over franchisee whenever jurisdiction over franchisor is proper does not comport with due process).

to Allen Stacy.

### b. General Jurisdiction Over Allen Stacy

The standard for general jurisdiction is demanding: contacts must be "continuous and systematic" and facts supporting them "extensive and persuasive."[64] Factors courts consider include: "whether a defendant's activities in the state are a continuous and central part" of its overall business; the nature and quality of business contacts it initiated in the state; the amount of revenue derived in the state; whether the defendant conducts direct sales, or has a sales force, in the forum; and whether it targets advertising to forum-state residents.[65]

Under this standard, even if Plaintiffs could establish an agency relationship with Hilton, they have not yet identified sufficient relevant contacts to support a finding of general jurisdiction over Allen Stacy. First, Plaintiffs apparently, but mistakenly, believe that if Hilton is Allen Stacy's agent and Hilton is subject to general jurisdiction in this state, then so, too, is Allen Stacy. Only Hilton's contacts in Pennsylvania that are made within the scope of its purported agency relationship or that directly benefit Allen Stacy are relevant to this Court's jurisdictional inquiry as to Allen Stacy.[66] And though Plaintiffs present significant evidence of Hilton's

---

[64] Stinnett v. Atl. City Showboat, Inc., No. 07-4743, 2008 WL 1924125, at *2 (E.D. Pa. Apr. 28, 2008) (quotations and citation omitted).

[65] Id. (citations omitted).

[66] See, e.g., Lackey, 2010 WL 272275 at *9 n.18 (irrespective of an agency relationship, the court must evaluate whether defendant has sufficient minimum contacts) (citing Nissley v. JLG Indus., Inc., 306 Pa. Super. 557, 562 (Pa. Super. Ct. 1982)); Bucephalus Alternative Energy Grp. v. KCR Devel., No. 08-7343, 2009 WL 5179091, at *7 (S.D.N.Y. Dec. 23, 2009) (agent's contacts on behalf of the principle must be sufficient for jurisdiction); Remy v. Las Vegas Transit Sys. Inc., No. 92-1033, 1992 WL 82312, at *3 (E.D. Pa. Apr. 13, 1992) (only the activities of parent corporation taken for the benefit of the subsidiary, not all forum contacts, could be imputed to subsidiary) (citing Gavigan, 646 F. Supp. at 789).

activities in Pennsylvania,[67] except for Hilton's reservation website, Plaintiffs have not presented

any facts suggesting that these contacts were within the scope of an agency relationship with

Allen Stacy.

Second, many of the advertising contacts Plaintiffs have identified are entirely irrelevant

to this Court's inquiry. Plaintiffs go to great lengths to demonstrate extensive state-focused

advertising efforts of Hilton and Pennsylvania-based Hilton affiliates to promote Pennsylvania

hotels.[68] Plaintiffs undoubtedly take this tack because only extensive advertising specifically

geared toward attracting forum residents, rather than national advertising, is a relevant contact for

purposes of general jurisdiction.[69] Though Plaintiffs have demonstrated at least some

Pennsylvania-targeted advertising, they have not shown that any of the Hilton entities undertook

those activities on behalf of Allen Stacy such that the contacts could be imputed to it. That the

Orazis were inclined to stay at the Texas Hampton Inn because of unilateral advertising activities

of Pennsylvania hotels does not subject Allen Stacy to general jurisdiction.[70] More importantly,

though Plaintiffs have demonstrated that Hilton and its in-state affiliates' advertising activities

---

[67] Pls.' Resp. at 2 & Ex. C ¶ 7 (Hilton employs marketing and sales staff in Pennsylvania); 2 & Ex. C ¶ 8 (Hilton operated a call center in Pennsylvania); 2, 5 & Ex. C ¶ 10 (twenty-nine Hilton hotels located in Pennsylvania); 2, 4–5 (Hilton does business in Pennsylvania, is registered with the state and has a registered agent here).

[68] Id. at 1 (Plaintiffs became familiar with the Hilton and Hampton Inn because of advertisements and Hilton hotels in the Philadelphia area.); 2, 3, 5 & Ex. C ¶¶ 14, 15, 17 (Hilton advertises Philadelphia area hotels in local publications and on its website through e-brochures and Travel Guides, and cooperates with local tourism bureau); 2 Ex. C ¶¶11–12 (the Philadelphia Embassy Suites and Hampton Inn provide directories of other Embassy Suites and Hampton hotels around the country); 5 & Ex. C ¶ 13 (Hilton's Philadelphia hotels promote Hilton's affinity programs).

[69] See, e.g., Gianfredi, 2010 WL 1381900 at *4.

[70] See O'Connor, 496 F.3d at 317–18 (fact that plaintiffs learned about non-resident hotel from travel agents and friends in Pennsylvania is irrelevant to non-resident's contacts with Pennsylvania).

are geared toward attracting stays at Pennsylvania hotels, they have not shown, as they must,[71] advertising geared toward attracting Pennsylvanians to stay at the Allen, Texas hotel. For the same reason, the more general advertising activities Plaintiffs identify[72] are likewise insufficient to subject Allen Stacy to jurisdiction *even if* conducted directly by Allen Stacy or pursuant to an agency relationship.[73]

Plaintiffs reliance on Hilton's interactive reservation website is likewise unavailing because, without more, even a commercial website permitting reservations is insufficient to confer general jurisdiction over the site operator.[74] In this Circuit, the greater the "interactivity and commercial nature of the exchange of information" on the site, the more likely it is that jurisdiction is proper.[75] But "the advent of the Internet did not alter the Third Circuit's requirement that the Plaintiff make a very high showing before a court exercises general

---

[71] See Fields, 816 F. Supp. at 1036, 1037 n.3 (no general jurisdiction where franchisee participated in Ramada's national advertising fund but there was no evidence that Ramada's advertising campaign was geared toward attracting Pennsylvania residents to use the non-resident franchisee's hotel).

[72] Pls.' Resp. at 1, 7 (Plaintiffs became familiar with the Hilton and Hampton Inn because of ads and Hilton hotels in the Philadelphia area.); 2 & Ex. C ¶ 16 (Hilton ran a national advertising campaign); 5 & Ex. C ¶ 11 (the Allen, Texas Hampton Inn is listed in national directories located in Philadelphia hotels).

The Court notes that Plaintiffs allege Hilton ran television ads on Pennsylvania television stations. Pls.' Resp. at 5 & Ex. C ¶ 16. The evidence submitted by Plaintiffs does not support the conclusion that any such ads ran in Pennsylvania.

[73] See, e.g., Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (ad included in an exclusively Pennsylvania directory would not constitute continuous and substantial business activity."); Fields, 816 F. Supp. at 1036, 1037 n.3.

[74] Stinnett, 2008 WL 1924125 at *4.

[75] See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

jurisdiction over a non-resident defendant."[76]  For general jurisdiction, "[w]here a website is interactive, the court must analyze whether the website is targeted specifically to Pennsylvanians and whether the website is central to the defendant's business in Pennsylvania."[77]  In addition to other evidence of centrality or targeting, courts look to the amount of sales to, or number of transactions with, forum residents.[78]

Here, Plaintiffs have demonstrated a high degree of commercial interactivity of Hilton's website,[79] but have failed to show the site was targeted toward Pennsylvanians or central to either Allen Stacy's or Hilton's business in Pennsylvania.  Plaintiffs have not presented any evidence of the amount of sales or number of transactions between Hilton and Pennsylvania residents via the website, much less between Allen Stacy and Pennsylvanians.  Nor have they presented any other evidence that the business generated from the website was in any way central to either entity's business.  Accordingly, Plaintiffs have not demonstrated that Hilton's online reservation services, even if within the scope of any agency relationship with Allen Stacy, is sufficient for general jurisdiction over Allen Stacy.

### c.    Specific Jurisdiction Over Allen Stacy

---

[76]  Snyder v. Dolphin Encounters Ltd., 235 F. Supp. 2d 433, 439 (E.D. Pa. 2002) (citation & quotations omitted).

[77]  In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig., -- F. Supp. 2d –, 2010 WL 3222019, at *34 (W.D. Pa. 2010) (citations & quotations omitted); accord Stinnett, 2008 WL 1924125 at *4.

[78]  See, e.g., Henning v. Suarez Corp., 713 F. Supp. 2d 459, 470 (E.D. Pa. 2010) (no general jurisdiction where only a fraction of sales in the forum were made via the Internet and total sales to the forum were less than two percent); Ciolli v. Iravani, 651 F. Supp. 2d 356, 364 (E.D. Pa. 2009) (no general jurisdiction where web-based business with state was less than one percent of total business).

[79]  See Pls.' Resp. at 10–11 & Ex. C ¶¶ 19 & 21 (identifying interactive & commercial elements of website).

Similarly, even if agency were found, Plaintiffs have not made a prima facie showing of specific jurisdiction over Allen Stacy.  For specific jurisdiction, the plaintiff's cause of action must "arise out of or relate to at least one of the defendants activities" in the forum state.[80] Additionally, the defendant must purposefully direct its activities at the forum; its forum-state contacts cannot be merely fortuitous in that they result from the unilateral acts of another.[81]

Plaintiffs have sufficiently demonstrated that the Orazi's claims arise from or relate to Hilton's contacts in Pennsylvania.[82]  In O'Connor v. Sandy Lane Hotel Co.,[83] the Third Circuit held that to satisfy that requirement, the contacts must have been more than the but-for cause of the injury, but need not rise to the level of proximate cause.[84]  Instead, the nature of the contact must have been such that the defendant could reasonably have expected to enjoy the benefits of the forum's laws and thus be subject to its obligations.[85]  In O'Connor, forum contacts—direct mail solicitation and subsequent phone calls—prompted the Pennsylvania plaintiff to enter into a contract while in Pennsylvania for spa services provided at the non-resident defendant's hotel. The contract was sufficiently related to the plaintiff's tort claim based on injuries that later occurred at the spa because, the court reasoned, the contract gave rise to an obligation to act

---

[80]  O'Connor, 496 F.3d at 317.

[81]  Id.  For this reason, the single contact with the Orazis is insufficient for specific jurisdiction here since Mr. Orazi initiated that transaction.

[82]  Although this Court must consider specific jurisdiction on a claim-by-claim basis, here, where the Orazis' negligence and loss of consortium claims factually overlap, the Court treats them as a single claim for its jurisdictional analysis.  Id. at 318 n.3.

[83]  496 F.3d 312 (3d Cir. 2007).

[84]  Id. at 323.

[85]  Id.

without negligence.[86]

Under the O'Connor court's approach, Plaintiffs' claims are sufficiently related to Mr. Orazi's online reservation in Pennsylvania. Plaintiffs assert that "Defendants' misrepresentation, via the Hilton website, that they would provide a handicapped room . . . *caused* the plaintiffs to stay at the Hampton Inn."[87] And a fair reading of Mr. Orazi's affidavit supports the conclusion that he entered into a binding contract in Pennsylvania based on the website's representation that a handicapped-accessible room was available.[88] The contract is thus sufficiently related to the Orazi's tort claims based on the later negligent performance of that contract.[89]

Plaintiffs have not shown, however, that either Hilton or Allen Stacy purposefully directed their activities at Pennsylvania. The "mere operation of a commercially interactive web site" that is accessible in the forum is insufficient to demonstrate the website operator purposefully directed its activities at the forum.[90] The defendant must also either "intentionally target[] the site to the forum state, and/or knowingly conduct[] business with forum state

---

[86] Id. at 324 (noting "[i]t is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims").

[87] Pls.' Resp. at 11 (emphasis added).

[88] Orazi Aff. ¶¶ 8, 10.

[89] See O'Connor, 496 F.3d at 323–24. Cf. Hurley v. Cancun Playa Oasis Int'l Hotels, No. 99-574, 1999 WL 718556, at *1 (E.D. Pa. Aug. 31, 1999) (no specific jurisdiction over reservation service where plaintiff did not use service to reserve a room at the hotel where injury later occurred).

Moving Defendants appear to concede that the negligence claim may arise out of or relate to confirmation of the reservation. See Defs.' Reply ¶ 37 (asserting that because Hilton confirmed room availability with Gateway Group, Hilton is subject to specific jurisdiction in Texas).

[90] Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d. Cir. 2003).

-19-

residents via the site" to satisfy the purposeful availment requirement.[91]  To determine whether a

defendant knowingly conducted business with forum residents via a website, courts have looked

to the number of web-based transactions with forum residents as a proxy for knowledge where

there is "no indication that the website owner knew of any transactions" with forum residents.[92]

For specific jurisdiction, however, a lesser showing of web-based transaction is required than for

general jurisdiction.[93]  But, as noted, Plaintiffs have not presented any evidence of the extent of

online transactions between either Hilton or Allen Stacy and Pennsylvanians, nor any other

evidence that Allen Stacy, through Hilton, purposefully availed itself of this forum's protections.

### 3. Jurisdictional Discovery

Though Plaintiffs have not made a prima facie showing of jurisdiction over Allen Stacy

and Hampton, they are entitled to jurisdictional discovery limited to information regarding

Defendants' contacts with Pennsylvania and the relationship between and among Defendants.[94]

Courts should permit jurisdictional discovery unless the plaintiff's jurisdictional claims are

"clearly frivolous."[95]  Indeed, the Third Circuit has characterized jurisdictional discovery as the

plaintiff's "right" when the plaintiff has alleged sufficient facts to suggest with "reasonable

particularity the possible existence of the requisite contacts between [the party] and the forum

---

[91] Id. at 452.

[92] See Food Sciences Corp. v. Nagler, No. 09-1798, 2010 WL 1186203, at *3 (D.N.J. Mar. 22, 2010).

[93] See Ciolli, 651 F. Supp. 2d at 364, 366 (finding amount of online business with Pennsylvanians, though insufficient for general jurisdiction, sufficient for specific jurisdiction).

[94] Plaintiffs requested jurisdictional discovery in the alternative, Pls.' Resp. ¶ 13, and Defendants have not opposed it.

[95] Toys "R" Us, Inc., 318 F.3d at 456 (citation and quotations omitted).

state."[96] Discovery may be particularly important where a plaintiff is faced with the difficult task of establishing jurisdiction over a corporate defendant.[97]

Here, Plaintiffs have made the required showing. They have alleged sufficiently particularized facts regarding Hilton's contacts with the Commonwealth and Allen Stacy's relationship with Hilton and other Defendants to suggest that discovery may reveal an agency relationship and in-forum contacts that, when imputed to Allen Stacy, may be sufficient for jurisdiction over Allen Stacy. And though Plaintiffs make only meager jurisdictional assertions regarding Hampton Inn, Plaintiffs have alleged sufficient facts as to the presence of Hampton-related entities within Pennsylvania and at least an inchoate relationship between Hampton Inn and Hilton to warrant discovery. Finally, discovery is particularly important here where each of the Defendants is a corporation and much of the information that Plaintiffs require to evaluate the nature of the relationships among the Defendants and the extent of their contacts with this forum, such as the franchise agreement, other contracts and transactional data, is publicly inaccessible and controlled by Defendants.[98]

Accordingly, Plaintiffs' allegations and evidence warrant jurisdictional discovery limited to information regarding the relationship among Hilton, Hampton Inn, Gateway Group and Allen Stacy, as well as their direct or indirect contacts with Pennsylvania and this District.[99]

---

[96] Id. (internal quotations omitted) (alteration in original) (citing Mellon Bank, 960 F.2d at 1223).

[97] Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009).

[98] The franchise agreement, for example, is confidential. Hutcheson Aff. ¶ 6.

[99] Although Gateway Group has conceded personal jurisdiction in Pennsylvania, Defendants' own evidence suggests an agency relationship between Gateway Group and Allen Stacy wherein Gateway performs reservation, sales and marketing functions on behalf of Allen Stacy, including

## B.    Venue & Transfer

Moving Defendants also seek dismissal on independent grounds of improper venue or, in the alternative, transfer to the United States District Court for the Eastern District of Texas on the basis of forum non conveniens.[100]

Under 28 U.S.C. § 1391(a), venue is properly laid in either:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[101]

Defendants argue that none of these requirements are satisfied here because: (1) no Defendant resides in Pennsylvania; (2) all the acts or omissions giving rise to the claim occurred in Texas, not this District; and (3) venue could be laid in the Eastern District of Texas.[102] Plaintiffs counter that Section 1391(a)(2)'s requirement that a substantial part of the events or omissions giving rise to the claim occurred in the district is met because Mr. Orazi reserved the handicapped accessible room and received confirmation of that reservation in this District, and

_____

securing national advertising, attending conferences, and promoting hotel stays by tourists.  See, e.g., Hutcheson Aff., Ex. 1 ¶¶ 3.71–72.  Plaintiffs are therefore entitled to explore the nature and scope of Gateway's relationship with Allen Stacy and whether any of Gateway's contacts in Pennsylvania are within the scope of that relationship.

[100]  Defendants' motion requests dismissal on grounds of improper venue, or in the alternative transfer "on the basis of forum non-conveniens pursuant to 28 U.S.C. § 1406."  See Mot. to Dismiss ¶¶ 20, 22.  Because 28 U.S.C. § 1404(a), rather than § 1406, provides for permissive transfer when venue is proper, and the doctrine of forum non conveniens is not applicable here, see Jaffe & Hough, P.C. v. Baine, No. 09-3000, 2010 WL 844748, at *4 n.43 (E.D. Pa. Mar. 10, 2010), the Court infers that Defendants seek transfer under Section 1404 if venue is properly laid here, or dismissal under Section 1406 if it is not.

[101]  Manning v. Flannery, No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010) (citing 28 U.S.C. § 1391(a)).

[102]  Mem. in Supp. at 15–16.

because Defendants' misrepresentation about the availability of handicapped accommodations, and the Orazi's reliance on it, occurred here.[103]  For the reasons that follow, though the Court agrees with Defendants that venue cannot be laid in this District under Section 1391(a)(2), it declines to rule on the applicability of 1391(a)(1) and (a)(3) or Defendants' request for transfer until after the close of jurisdictional discovery and renewal of Defendants' motion.

Section 1391(a)(2) requires that a "substantial part of the events or omissions giving rise to the claim occurred" in this District.[104]  To make that determination, the Court evaluates the nature of the claims, the events that gave rise to them and where those events or omissions occurred.[105]  Though the substantiality standard permits venue in more than one district, the events or omissions must bear a close nexus to the claim.[106] Those that are "qualitatively central"—that is, without them, the plaintiff cannot prevail—meet that standard.[107]

Here, Plaintiffs' claim is for negligence, which arises where the duty of care is violated,[108] and all of the negligent acts or omissions alleged in the Complaint occurred in Texas.[109]  In a

---

[103]  Pls.' Resp. at 12–13.

[104]  Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

[105]  See id. at 295–96 (proceeding with these steps).

[106]  Hayes v. Transcor Am., LLC, No. 08-293, 2009 WL 1795309, at *2 (E.D. Pa. June 23, 2009) (citations omitted).

[107]  Id. at *3.

[108]  RAIT P'ship, LP v. Fieldstone Lester Shear & Denberg, LLP, No. 09-28, 2009 WL 3297310, at *6 (D. Del. Oct. 14, 2009); see also Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc., No.05-2052, 2005 WL 2660351, at *3 (E.D. Pa. Oct. 18, 2005) (in negligence and strict liability claim, substantial part of events or omissions occurred where alleged defective design and manufacturing occurred and where accident occurred).

[109]  See Compl. ¶¶ 15–19.

strained characterization of Defendants' alleged omissions, Plaintiffs assert that subsection

(a)(2)'s substantiality requirement is satisfied because Hilton's online confirmation in

Pennsylvania of the Orazis' reservation for a handicapped room constituted a failure to warn

Plaintiffs of a dangerous condition.[110]   But nowhere in their Complaint do Plaintiffs allege among

the relevant negligent acts a failure to warn of the unavailability of handicapped accommodations

at the time of the reservation or registration.   Instead, the Complaint alleges failure to provide

notice of the hazards "associated with the tub," failure to place "warnings or barricades" to

prevent the injury, and failing to have "mats, cones, or other barriers in place to warn persons" of

the unsafe conditions.[111]   Plainly, each alleged instance of failure-to-warn occurred at the Texas

location.

The event that occurred in *this* District relating to the Orazis' claim is more accurately

characterized as the execution of a contract to provide handicapped accommodations and the

creation of a duty of care in fulfilling its terms.   The Court, however, can find no support for the

proposition that the act giving rise to the duty of care also constitutes an act or omission giving

rise to a negligence claim.   Instead, courts in this Circuit and elsewhere have found that in

negligence and comparable claims for breach of duty, a "substantial part of the events or

omissions" occurred in the district or districts where the acts constituting *breach* occurred not

where the contract under which the duty arose was executed.[112]   Indeed, although damages, like

---

[110]   Pls.' Resp. at 12–13.

[111]   Compl. ¶ 19(d), (e) & (s).

[112]   See, e.g., Henshell Corp. v. Childerston, No. 99-2972, 1999 WL 549027, at *4 (E.D. Pa. July 28, 1999) (substantial part of the events giving rise to legal malpractice claim occurred in Delaware where legal work was performed not the Eastern District where the contract was formed); Beshears v. Greyhound Lines, Inc., No. 04-1014, 2005 WL 1367211, at * 2 (M.D. Ala. June 6, 2005) (substantial part

-24-

duty of care, is an element of a negligence claim and thus arguably central to the claim, courts appear to consistently reject assertions that venue is proper under § 1391(a)(2) in the district in which the damages were incurred.[113]  Plaintiffs would be on more solid footing if their claim sounded in contract, misrepresentation or fraud, where the misrepresentation itself forms part of the wrongdoing.[114]  But Plaintiffs' claims sound in tort, and a substantial part of the events giving rise to them did not occur in this District.  Accordingly, venue may not be laid under Section 1391(a)(2).[115]

While subsection (a)(2) is inapplicable, a venue inquiry under Section 1391(a)(1) is premature because it is inherently tied to this Court's jurisdictional inquiry.  First, Section 1391(a)(1) requires that all defendants reside in the same state.  Corporate defendants "reside" in a state if they are subject to personal jurisdiction there.[116]  Though Hilton and Gateway Group

_____

of events occurred where bus accident occurred, not where plaintiff purchased her ticket and began her trip).  Cf McCaskey v. Cont'l Airlines, Inc., 133 F. Supp. 514, 525 (S.D. Tex. 2001) (district in which negligence occurred is where substantial part of the events occurred).

[113]  See Herbert v. Christiana Care Corp., No. 04-1984, 2004 WL 2554562, at *2 (E.D. Pa. Nov. 8, 2004) (citing cases).

[114]  See, e.g., Fox v. Dream Trust, -- F. Supp. 2d. --, 2010 WL 3881297, at *5 (D.N.J. Sept. 28, 2010) (injurious misrepresentation within the forum is sufficient for venue in state fraud and misrepresentation claims); Leone v. Cataldo, 574 F. Supp. 2d 471, 484–85 (E.D. Pa. 2008) (misrepresentation within the forum was among substantial events in contract claim).

[115]  This conclusion is not inconsistent with this Court's finding, for purposes of specific jurisdiction, that the Orazis' claims arise from or relate to Hilton's contact with them through the online reservation system.  The requirement that the claim "arise out of or relate to" a defendant's contacts is more relaxed, requiring only that "a meaningful link exist[] between a legal obligation that arose in the forum and the substance of the plaintiffs' claims."  O'Connor, 496 F.3d at 324.

[116]  See, e.g., Micro-Assist, Inc. v. Cherry Commc'ns Inc., 961 F. Supp. 462, 464 (E.D.N.Y. 1997).

thus clearly reside in Pennsylvania,[117] whether Allen Stacy and Hampton Inn are likewise Commonwealth residents depends on the results of jurisdictional discovery. Second, Section 1391(a)(1)'s requirement that at least one Defendant reside in this District likewise depends on the results of discovery. Under 28 U.S.C. § 1391(c), in a multi-district state, a corporation that is subject to personal jurisdiction at the time the action began is deemed to "reside" in any district in which its contacts are sufficient to subject it to personal jurisdiction were that district a separate state, or, if there is no such district, the district in which its contacts are most significant.[118] Jurisdictional discovery will thus inform this Court's determination as to whether at least one Defendant has sufficient contacts with this District. Accordingly, the Court defers its determination as to the propriety of venue under Section 1391(a)(1) until after jurisdictional discovery.[119]

---

[117] Hilton no longer contests jurisdiction, nor could it since Hilton is registered to do business in Pennsylvania and admits to having a registered agent here. See Mot. to Dismiss ¶ 3 (Hilton transacts business in Pennsylvania and has a registered agent here); Pls.' Resp. at 2 & Ex. C ¶ 6 (Hilton registered with Pennsylvania Department of State). When a corporation is registered to do business in Pennsylvania, it may be constitutionally subject to jurisdiction here. See, e.g., Atl. Pier Assocs., LLC v. Boardakan Rest. Partners L.P., No. 08-4564, 2010 WL 3069607, at *2 (E.D. Pa. Aug. 2, 2010). And Gateway Group admits it is subject to personal jurisdiction. Defs.' Reply at 2 n.2. Thus, under § 1391(c), both are residents are Pennsylvania for purposes of §1391(a).

[118] 28 U.S.C. § 1391(c).

[119] See Myelle, 1992 WL 358086 at *5 (deferring venue and transfer of venue decisions until after discovery where venue depended on personal jurisdiction).

The Court is mindful, however, that while Plaintiffs bear the burden as to jurisdiction, Defendants bear the burden as to venue. Myers, 695 F.2d at 724–25. Thus, if Plaintiffs make a prima facie showing that all Defendants are subject to personal jurisdiction in Pennsylvania, it is Moving Defendants' burden to demonstrate that no Defendant would be subject to jurisdiction in this District. See Simon v. Ward, 80 F. Supp. 2d 464, 468 (E.D. Pa. 2000)

Finally, because Section 1391(a)(3) provides only a fallback basis for venue,[120] this Court defers consideration of whether venue is proper until applicability of (a)(1) can be determined. Similarly, because the propriety of venue in this District determines whether this Court considers transfer pursuant to 28 U.S.C. § 1404 or § 1406(a), the Court likewise defers ruling on transfer of venue until after it determines whether venue may be laid here.[121]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Hampton Inn, Allen Stacy and Gateway Group is denied with leave to renew following the close of jurisdictional discovery.

An appropriate Order follows.

---

[120] See FS Photo, Inc. v. PictureVision, Inc., 48 F. Supp. 2d 442, 448 (D. Del.1999) ("[S]ubsection (a)(3) is applicable only if subsection (a)(1) and (a)(2) do not apply.") (citing Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir.1996)).

[121] See Myelle, 1992 WL 358086 at *5.